[No. 25831. Department One. October 10, 1935.]

THE STATE OF WASHINGTON, *on the Relation of George Nelson, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

*Eggerman & Rosling, Kay L. Johnson,* and *Flick & O'Neil,* for relator.

*Allen & Wilkins,* for respondents.

TOLMAN, J.—This is a proceeding in this court to review certain orders entered by judges of the superior

[1]Reported in 49 P. (2d) 903; 54 P. (2d) 1215.

court for King county in the case of Von Herberg v. Nelson, there pending.

It appears that the action was commenced in October, 1931, by the filing of a complaint which alleged that, by virtue of a written agreement between the parties executed in September, 1928, the plaintiff and defendant became copartners in the carrying out and performing certain contracts with the city of Seattle for the construction of local improvements. The complaint further alleged that the copartners proceeded with work under the contracts, that books of account were kept by the defendant, Nelson, and that Nelson denied the plaintiff's interest in the contract, refused an accounting, etc., etc. The prayer was for an accounting and for a judgment against Nelson for one-half of all of the profits accruing in accordance with the terms of the copartnership agreement.

The defendant answered the complaint, denying the execution and delivery of the copartnership agreement, denying the existence of any copartnership, and, of course, denying that the plaintiff had any interest in any profits resulting from the performance and completion of the contracts for local improvements referred to.

The cause came on for trial before Honorable Robert S. Macfarlane, one of the judges of the superior court for King county, and the court having heard the testimony and received evidence over a period of several days and having heard the argument of counsel, rendered an oral opinion in considerable detail, in and by which he found that the written copartnership agreement had been executed and delivered, and that it became effective between the parties. Thereupon, the defendant moved for a new trial, voluminous briefs were presented, the matters involved were argued *in extenso,* and thereafter the trial court made and filed

a memorandum opinion, which was followed by an order or adjudication in form as follows:

"ORDER DIRECTING REFERENCE TO TAKE AN ACCOUNT

"This matter having heretofore come on for trial, the plaintiff appearing in person and by his attorney Jay C. Allen, Esq., and the defendant in person and by his attorney E. H. Flick, the matter was called; whereupon it was agreed between the plaintiff and the defendant as shown by the record that the court should first determine when [whether] the plaintiff and the defendant were copartners in the performance of the contract between the defendant George Nelson, and the city of Seattle, for the Improvement of Division No. 1 and No. 2 of West Hanford Street, et al., under ordinance No. 54960, Local Improvement District No. 4751, which contract was awarded to the defendant George Nelson on or about the 10th day of August, 1928, and, that if the court should hold that the plaintiff was a partner with the defendant in the carrying out and performance of the said contract, then that the matter was one that should be referred to a referee to take an account for the reason that the accounting would consume such time as to make it impracticable for the court to hear and determine it; thereupon the court announced that such would be the procedure.

"Whereupon, the plaintiff and the defendant offered and introduced their proofs and the court having heard the same, arguments of counsel and being fully advised did announce its oral opinion; thereafter the defendant did move the court for a new trial, and with the court's permission, the plaintiff and the defendant did re-argue said matter, and the court being fully advised did render its memorandum opinion, which said memorandum opinion is hereby referred to; and the court now being fully advised, it is,

"ORDERED, CONSIDERED AND ADJUDGED, that on or about September 21st, 1928, a co-partnership consisting of J. G. von Herberg and George Nelson came into being which co-partnership was to and did prosecute the contracts with the city of Seattle involving West Hanford Street under ordinance No. 54960 and the re-

grading of Denny Hill under ordinance No. 55594; it is further

"ORDERED, ADJUDGED AND DECREED, that the defendant has failed, refused and declined to give to the plaintiff a statement of the profits and/or losses on said West Hanford Street Sewer contract; and has failed and refused to account to the plaintiff for any of the profits thereof, although in open court it was admitted by the defendant that there were profits; and, the court further finding and decreeing that it is necessary in order for the court to make a proper finding and/or decree herein as to the rights of the parties, an accounting should be had.

"WHEREFORE, it is ORDERED and DECREED, that William G. Long, a member of the bar of this court, be and he is hereby appointed Referee herein to take an accounting for the purpose of ascertaining the total profit of the entire West Hanford Street Sewer project under said contract with the city of Seattle, for the Improvement of Division No. 1 and No. 2 of West Hanford Street, et al., under ordinance No. 54,960, Local Improvement District No. 4751, which contract was awarded to George Nelson on the 10th day of August, 1928, or thereabouts; to further ascertain the amounts and dates of advancement of capital, and withdrawals thereof; the amount of capital in the project from time to time, and interest paid thereon if borrowed, and to make full return thereof to this court as provided by law, at which time a hearing will be held, wherein additional testimony may be received to ascertain the proportionate part of the total profit for the entire project which might be properly allocated if, upon reflection, the court entertains the view that under the law and the facts the partnership was dissolved prior to the completion of the contract. Compensation of Referee to be fixed by court by stipulation; it is further

"ORDERED, CONSIDERED AND ADJUDGED, that by the entry of this order at this time directing a reference to take an account the court does not at this time make any definite finding of the court as to the date of the termination of the partnership relation so far as the

West Hanford Street Sewer contract is concerned; and it is further

"ORDERED, CONSIDERED AND ADJUDGED, that a supersedeas bond is fixed by this court to supersede the foregoing order if appealable in the amount of Twenty-Five Thousand Dollars ($25,000).

"Exception allowed.

"DONE AND ORDERED IN OPEN COURT, this 18th day of August, 1933.    ROBERT S. MACFARLANE, Judge."

The defendant in the cause prosecuted an appeal from the order or decree which we have just quoted, and the appeal was dismissed by this court upon the ground that the order appealed from was not an appealable order. *Von Herberg v. Nelson,* 175 Wash. 572, 27 P. (2d) 1103.

Pending the appeal, or following its dismissal, the trial judge resigned his office, and the referee named in the order, having himself been appointed a judge of the superior court, became disqualified to act as referee. Thereafter, the plaintiff made formal application for the appointment of some other suitable person as referee, and the matter, coming on to be heard, was, by the presiding judge, referred to Honorable Hugh C. Todd, a judge presiding in department No. 5, which department had formerly been presided over by Judge Macfarlane; the matter was presented and argued, briefs were filed, and an order was made by Judge Todd appointing one Leo W. Stewart as the referee in the place of William G. Long, the order reciting that Judge Macfarlane's previous order "shall remain unaltered and unchanged in any particular whatsoever, save and except as to the personnel of the referee."

After the entry of that order, the defendant, Nelson, applied to this court for a writ of prohibition, and after hearing, this court denied the petition without opinion.

Thereafter, the defendant, Nelson, through his pres-

ent attorneys, presented a motion to the trial court seeking the entry of an order directing a mistrial because of the resignation of Judge Macfarlane prior to the conclusion of the case and prior to the making of a final order, or a judgment, finally disposing of the issues. This motion was presented to and heard by Judge Robert M. Jones, resulting in an order overruling and denying the motion on the ground that the matters involved had been presented to the supreme court by the application for a writ of prohibition, and that the denial of that writ was *res judicata* of the matters presented. Whereupon, the present application was presented to this court, and a voluminous return has been made thereto. The whole matter is thus before this court.

Respondent presents two technical defenses: (1) That the judgment of dismissal in the prohibition proceeding is *res judicata;* and (2) that the first order made by Judge Todd was, in legal effect, a denial of the motion for a mistrial, and that the time within which that order might have been reviewed has long since expired. The view at which we have arrived on the merits makes the consideration of those questions unnecessary.

We have here a question of practice and procedure only. Hence, though authorities from other jurisdictions may be interesting, they are not controlling and will not be cited nor discussed.

Our judicial procedure contemplates that every material issue properly presented shall be once fairly tried and determined, and that such determination shall be final except for the right of review by appeal or proper writ.

The issue presented to Judge Macfarlane was as to whether or not a copartnership came into existence, and that issue had to be determined before an ac-

counting could be ordered and the other issues in the case tried out. The copartnership issue was exhaustively tried by Judge Macfarlane, and presumably it was fairly tried and correctly determined. The order then entered, so far as it relates to the existence of the copartnership, is final and conclusive in form and substance and was so intended, because upon it is based the further order for an accounting.

True, it was not an appealable order, because it was not a final judgment in the cause; and, no doubt, had Judge Macfarlane remained upon the bench and continued to sit in the cause, he might, at any time before the entry of the final judgment, have modified or reversed his previous order. But it is not by any means to be presumed that he would have done so. The presumption runs the other way. No other judge of the same court could have modified or reversed the order, and the right so to do, which resided in Judge Macfarlane, ceased and ended when he ceased to be a judge of that court.

Speaking of practically the same question in the case of *State ex rel. Bloom v. Superior Court,* 171 Wash. 536, 18 P. (2d) 510, this court said:

"It may be true, also, as suggested, that he had the right to modify, change or set aside any of such findings and conclusions at any time before judgment was entered thereon. But that was a right residing in him as the trial judge, and the matters remained within his breast if he continued to be the trial judge until final judgment. But this right to change or modify was not a right which he could take with him into private life, or transfer to his successor in office or any contemporaneous judge of the same court. So, then, the trial judge having resigned and ceased to be a judge of the superior court immediately after making the findings, no power remained in him, or in any other judge, to change or modify the findings, and they could not be

altered or set aside except only on review in some manner provided by law."

Thus, with the resignation of Judge Macfarlane, there remained no right or power in any judge of the superior court to set aside and vacate the work which had then been fully performed, and which had culminated in an adjudication based upon findings and conclusions which the trial judge had drawn, and presumably correctly drawn, from what took place during the trial had before him.

In the *Bloom* case, *supra,* the retiring judge had made findings only. Here, Judge Macfarlane necessarily went further. He not only must have found the necessary facts and drawn conclusions therefrom, but he also definitely adjudicated the particular issue. We regard the *Bloom* case as absolutely controlling here. Not only so, but it lays down a rule which tends to prevent useless expense and delay and preserves the work, so far as completed, of a retiring judge.

If a final judgment shall be entered against the relator and if an appeal be taken, the issue decided by Judge Macfarlane can be reviewed by this court as well as the other issues in the cause, and the relator will thus have had both the trial below and the review on appeal which our system of practice contemplates. To hold with the relator, would be to set aside, without reason, a completed adjudication of one issue completely tried by one judge, solely because some other judge must necessarily try and determine the other issues in the cause.

The rulings appointing a referee to fill the vacancy and denying a mistrial will stand affirmed.

GERAGHTY and MITCHELL, JJ., concur.

BEALS, J. (dissenting)—The order which is the subject matter of this appeal, and which is quoted in full

in the opinion of the majority, adjudged that, on or about a date therein specified, a copartnership between Messrs. von Herberg and Nelson came into being, and that the copartnership prosecuted two contracts with the city of Seattle. The order does not purport to find the relation of the partners one with the other, whether they were to share equally in the profits, or what the relation between them was, save that they were copartners. Neither is there any finding as to whether or not, as between the partners, the two contracts were to be considered together or separately, a matter which conceivably might be of importance.

The referee was directed to take an accounting for the purpose of ascertaining certain definite facts and reporting the same to the court. The order further provided that, upon the filing of this report, testimony might be received to enable the court to ascertain

" . . . the proportionate part of the total profit for the entire project which might be properly allocated if, upon reflection, the court entertains the view that under the law and the facts the partnership was dissolved prior to the completion of the contract."

The use of the word "reflection" in this portion of the order indicates, as I understand the same, that the court intended to consider further evidence already received. It seems to me clear that this word cannot refer to testimony to be taken in the future.

By the next paragraph of the order, the court indicated that no definite finding was being made as to the date of the termination of the partnership relation, in so far as one of the contracts was concerned.

The order contains no finding as to the termination of the partnership relation in regard to any phase of the work undertaken thereby.

Under the opinion of the majority, the superior court must accept the order as a binding adjudication of fact.

How far the remaining portion of the order is binding upon the trial court, is not determined. The trial court did, in the order under review, appoint a referee. Would it be contended that, if the court did not desire to appoint a referee, this court would require that one · be appointed? The order apparently purports to limit the later field of inquiry, but can it be contended that the court which is to render a final judgment in the cause is limited as to the extent in which further inquiry may seem necessary or desirable?

It seems to me that the question determined by this court in the case of *State ex rel. Bloom v. Superior Court,* 171 Wash. 536, 18 P. (2d) 510, relied upon by the majority, was very different from that here presented. In the case cited, the trial had been completed, and the court had made and entered its findings of fact and conclusions of law. Under practically all sound authority, the judge who heard and determined the cause having resigned, another judge of the court should enter the formal judgment in accordance with the findings and conclusions, the entry of the judgment being purely a ministerial act, the only matter of discretion to be exercised in connection therewith being to ascertain that the judgment followed the findings and conclusions as entered by the judge who presided at the trial. All questions in controversy had been tried and determined. The scope of the question here presented goes far beyond that decided in the case cited.

It seems to me clear that the order now under consideration fails to establish definitely any fact which another judge should be required to accept and proceed with the trial. The nature of the partnership relation between Messrs. von Herberg and Nelson must be determined, and a finding which goes no further than to establish the fact that a partnership was established

on or about a certain date leaves open so many questions that the establishment of the order as a finality may well result in the loss, rather than in the saving, of time.

I am convinced that, by the use of the word "reflection" in the portion of the order above quoted, the trial court indicated its intention to reconsider evidence already taken in connection with at least one phase of the controversy. That phase of the matter being undetermined, if evidence already received be necessary to its determination, how can the trial court now decide the question without rehearing some of the testimony already received? The trial court will be required to consider such evidence for one purpose, but disregard it as to another. It is, of course, undoubtedly the law, as stated by the majority, that the judge who entered the order, at any time prior to the entry of final judgment, could have reconsidered any phase of the case and changed his ruling thereon. A trial court has this right at any time up to the entry of final judgment, and to some extent thereafter, as outlined by statute.

Under the majority opinion, an interlocutory order, which seems to me most casual in its nature, and which, according to its terms, contemplates further consideration of evidence received as to one phase of the question to be finally decided, becomes a conclusive determination of a basic question of fact, which the judge who in due time will be called upon to enter a final decree in the action should be free to decide upon the evidence. No motion to reopen the case for the introduction of newly discovered evidence upon the question of partnership can be considered. It would seem that the trial court is deprived of the right to grant a new trial, in which the issue of fact as to whether or not a partnership was formed can be considered.

A judge called upon to hear and determine an action should not be so handicapped. The establishment of a sound procedure for the determination of litigation requires that the judge to whom the cause may be assigned for hearing shall be permitted, or, indeed, required, to pass upon all questions of fact necessary to be determined by the final decree which, in due time, must be entered.

It seems to me clear that the order now before us for construction establishes no fact which the judge to whom the case has been assigned for hearing should be required to accept as definitely established, and that the order of the trial court denying a mistrial should be reversed.

STEINERT, J., concurs with BEALS, J.

ON REHEARING.

[*En Banc.* February 17, 1936.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.