[No. 26708. Department One. May 25, 1938.]

J. G. VON HERBERG, *Appellant,* v. GEORGE NELSON, *Respondent.*[1]

*Allen & Wilkins (Edgar R. Rombauer,* of counsel), for appellant.

*Eggerman & Rosling (Walser S. Greathouse* and *Ray L. Johnson,* of counsel), for respondent.

GERAGHTY, J.—The plaintiff sues to recover from the defendant one-half of the profits realized from a municipal contract with the city of Seattle. The complaint alleges that the defendant, on or about August 10, 1928, entered into a contract with the city of Seattle for the construction of what is referred to as the West Hanford street trunk sewer, and, on or about September 14, 1928, entered into another contract with

[1]Reported in 79 P. (2d) 703.

the city of Seattle for the reduction of the area known as Denny Hill; and that thereafter, on or about September 21st, plaintiff and defendant formed a copartnership for the prosecution of the work to be done under these contracts, the partnership being evidenced by the following written instrument:

"THIS AGREEMENT, made this day between GEORGE NELSON, party of the first part, and J. G. VON HERBERG, party of the second part,

"WITNESSETH:

"For and in consideration of One Dollar ($1.00) and other considerations, parties hereto agree that they have, and do by these presents, form a partnership for the carrying on of the two contracts with the City of Seattle, namely, contract for the improvement of Division No. 1 and No. 2, of West Hanford Street, et al., under Ordinance No. 54960, local improvement district No. 4751, which contract was awarded to George Nelson, the undersigned party of the first part herein, on the 10th day of August, 1928, and also that certain contract for the removal of the area known as Denny Hill, being entitled Improvement Sixth Avenue under Ordinance No. 55,596, local improvement district No. 4818. (See also Ord. No. 55861.)

"It is further stipulated and agreed, that the parties to this agreement shall share equally in profits and losses, and that neither of the said parties to this partnership shall take any salary or compensation to himself during the pendency of this work.

"It is further stipulated and agreed that the books of the partnership shall be open to inspection at all times, equally to either party.

"IN TESTIMONY WHEREOF, the parties have hereunto set their hands this 21st day of September, 1928.

"GEO. NELSON
"Party of the First Part.
"J. G. VON HERBERG
"Party of the Second Part."

It is alleged that thereafter, under the firm name of "George Nelson & Company," the partnership pro-

ceeded with the work covered by the contracts until on or about December 19, 1929, on which day, by a written contract between himself and the defendant, the plaintiff relinquished his right under the contract for the reduction of Denny Hill; that thereafter the partnership completed the Hanford street contract.

It is alleged that all the books of account of the partnership were kept by the defendant, and that he received all payments made by the city on account of the work done under the Hanford street contract; that the plaintiff had requested and demanded an accounting, but that the defendant had refused to give the same or any information concerning it, and that a large profit, the exact amount of which was unknown to the plaintiff, was made on the contract. An accounting of the contract is prayed for, and judgment for one-half of all profits accruing thereunder.

In his answer, the defendant admits the execution by him of the two city contracts, but denies the existence of any partnership between the parties as to the Hanford street sewer contract; the withdrawal of the plaintiff from the Denny Hill contract is admitted. The answer contains a general denial of any right in the plaintiff to share in the profits of the sewer contract.

When the cause came on for trial in the superior court, it was assigned to Judge Robert S. Macfarlane. After a hearing lasting several days on the issue whether a partnership came into existence, as alleged in the complaint, Judge Macfarlane filed a memorandum of opinion, in which he announced his conclusion that a partnership came into being or was "launched," but that he could not say whether the partnership continued until the completion of the contract. The opinion concludes:

"From the foregoing it follows that plaintiff is entitled to share in the profits, if any, of the Hanford Street project during at least the first portion of the enterprise. It is not necessary at this time to, and I do not, make a definite finding as to the date of termination of the partnership relation so far as the Hanford Street project is concerned, because in order to arrive at the proportionate profits for any given period it is necessary to first ascertain the profit of the entire project. Counsel being unable to stipulate as to a suitable referee, I hereby designate Wm. G. Long to act as referee to take an accounting for the purpose of ascertaining the total profit of the entire Hanford Street project, to further ascertain the amounts and dates of advancements of capital, and withdrawals thereof, the amount of capital in the project from time to time, and the interest paid thereon if borrowed, and to make full return thereof to this court as provided by law, at which time a hearing will be held wherein additional testimony may be received to ascertain the proportionate part of the total profit for the entire project which might be properly allocated if, upon reflection, I am of the view that under the law and the facts the partnership was dissolved prior to the completion of the contract."

The court thereupon entered a formal order appointing Wm. G. Long as referee to take the accounting. The order provided that, by its entry, the court did not, at the time, make any finding as to the date of the termination of the partnership relation.

Judge Macfarlane resigned from the superior court after entry of this order, and Judge Hugh C. Todd was appointed to the bench in his stead. Wm. G. Long, the referee named in the order, having also been appointed a judge of the superior court, Judge Todd, to whom the case was assigned, appointed Leo W. Stewart as referee in place of Judge Long to take the accounting. Reference here may be made to the fact that an appeal, taken by the defendant from the order

of Judge Macfarlane appointing a referee, was dismissed by this court on the ground the order was not appealable. *Von Herberg v. Nelson,* 175 Wash. 572, 27 P. (2d) 1103.

In appointing Mr. Stewart as referee in place of Judge Long, Judge Todd's order recited that the previous order "shall remain unaltered and unchanged in any particular whatsoever, save and except as to the personnel of the referee." After entry of Judge Todd's order, defendant Nelson applied to this court for a writ of prohibition, which was denied without opinion. Afterwards, the defendant presented a motion to the trial court for an order directing a mistrial, because of the resignation of Judge Macfarlane before the conclusion of the case. On the denial of this motion, the defendant applied to this court for a writ of certiorari to review the orders appointing the referee and denying the motion for mistrial.

The orders were reviewed and affirmed. In its opinion, the court states that the order of Judge Macfarlane finding the existence of a partnership and making the appointment of a referee to take an accounting was final and conclusive in form and substance, but that:

"If a final judgment shall be entered against the relator and if an appeal be taken, the issue decided by Judge Macfarlane can be reviewed by this court as well as the other issues in the cause, and the relator will thus have had both the trial below and the review on appeal which our system of practice contemplates." *State ex rel. Nelson v. Superior Court,* 184 Wash. 97, 49 P. (2d) 903, 54 P. (2d) 1215.

After his appointment by Judge Todd, Referee Stewart proceeded to take a complete accounting of the Hanford street sewer contract. He found that there was a net profit on the job of $181,954.27. In arriving at this figure, he disallowed an item of fifty

thousand dollars, stated by Mr. Flick, attorney for defendant Nelson, at the hearing, to have been a contribution to a political chest for the city administration and paid to one Paysse:

"MR. FLICK: I think the next item is the $3,000 which was passed through our office and picked up in what was a Paysse note at the American Savings Bank, it was called at that time; it was what we always spoken of as the Gleason Bank, and is a part of the $50,000 which we have discussed incidentally, or rather informally; the other $47,000 being paid directly to Paysse, the funds being apparently pre-arranged for a political chest at the time; shortly after the entry of the Hanford Street project. The discussion came up—Mr. von Herberg was present—this was to be approximately one-third of the net return of the Hanford Street project. A similar arrangement was made with the Denny Hill project; that being a political chest of one-fourth of the net that came out of the Denny Hill regrade. MR. WATT: I would want to raise a question as to its being chargeable to this job. MR. FLICK: It is really for the referee and Judge Todd. While we are on the subject; in the conference that we had with Mr. Edwards, Mr. von Herberg stated in my presence that he had gotten a better deal on the political chest than Mr. Nelson; that he had a better arrangement than Mr. Nelson had gotten on the Hanford Street job."

The defendant himself testified that the payment to Paysse was made as compensation for an idea suggested by him for timbering a large tunnel involved in the Hanford street project; that the idea was well worth the price, as it effected a large saving. He testified that, after the submission of his bid and before the awarding of the contract, he made a written agreement with Paysse. He produced what purported to be the body of the agreement, with the signatures and date line cut off. His memory as to details was very vague. The payment was not noted in his books.

Three thousand dollars of the sum was represented by a note signed by Paysse and himself at one of the banks in Seattle and thereafter paid through Mr. Flick; the other $47,000 was paid by delivery of local improvement bonds, payable to bearer. There were no witnesses to the delivery of the bonds nor any record made of it. The defendant's explanation of the secretive character of the transaction was that plaintiff, on learning of the arrangement, told him that Paysse was a city administration man and he would have to be careful. He also testified that the plaintiff had said he himself had made a better deal on the Denny Hill contract, as the agreement provided for only a twenty-five per cent split on the Denny Hill profit.

The referee did not believe the defendant's explanation of the consideration for which the payment was made, and, holding the payment to have been made upon wholly immoral and corrupt considerations, refused to allow it as an expense. With this exception, the correctness of the accounting is unchallenged. Together with his report and findings, the referee filed in the cause a lengthy statement of the testimony taken before him.

After the report of the referee, the hearing on the cause was resumed before Judge Todd. While the hearing was primarily to determine whether the partnership was terminated before the completion of the contract, and, if so, at what time, the testimony covered much of the ground already gone over at the hearing before Judge Macfarlane. At the close of the evidence, Judge Todd announced that, while he was bound by Judge Macfarlane's decision that the partnership came into being, he also reached the same conclusion himself from the testimony. He was also of the opinion that the partnership had not been terminated before completion of the contract. He confirmed the find-

ings of the referee as to the profit made on the job, but reached the conclusion that, while the corrupt agreement with Paysse, in relation to the Hanford street contract, was had before the plaintiff became associated with the defendant, the plaintiff acquiesced in it and had made a similar arrangement himself with respect to the Denny Hill contract; that the whole transaction was so tainted that neither party was in court with clean hands; and that the court would lend its aid to neither, but leave them where they had placed themselves. Judgment was accordingly entered dismissing the action, and the plaintiff appeals.

The cause is here for trial *de novo* on the record. While lengthy memorandum opinions were filed by the two judges who participated in the trial, no formal findings of fact were made, except the finding embodied in Judge Macfarlane's order appointing a referee, that a partnership came into being, without any determination as to its duration.

Two issues are presented upon the record and discussed in the briefs: (1) Whether the parties became copartners for the execution of the Hanford street contract; and (2) the application of the doctrine of unclean hands.

On the first question, the existence of a partnership on the Hanford street contract, we have reached a different conclusion from that announced by the trial court.

The appellant sues upon the alleged partnership agreement of September 21, 1928. The draft of this agreement was prepared by Mr. Flick, respondent's counsel. Respondent signed the agreement in duplicate and gave it to the appellant for his signature. On receipt of the agreement, appellant referred it to his counsel, Mr. Allen. September 25, 1928, Mr. Allen wrote a letter to appellant, in which he said that the

contract submitted did not meet with his approval, a fact he had already stated to the appellant. After enumerating several objections to the agreement, all having relation to the manner in which the partnership affairs were to be managed, Mr. Allen's letter continues:

"You will notice that you are becoming an equal partner for the West Hanford Street job and agree to stand one-half the losses thereof. I did not understand such to be your agreement. I understood that, for aiding in the financing of the Denny Hill job you were to receive in addition to one-half of the profits of that job, one-half of the profits which Nelson should make on the West Hanford St. job."

The appellant testified that, notwithstanding Mr. Allen's recommendation,. he executed the partnership agreement and gave a signed copy to the respondent. The respondent denies that the appellant ever returned a signed copy to him.

The contract for the Hanford street sewer project was formally executed by the city and respondent August 10, 1928. At the time this contract was let to respondent, the city had called for bids on the Denny Hill project, and it is to be inferred from the record that tenders had been received on that job before the respondent and appellant came to an understanding to bid on it. Respondent testified that the suggestion for bidding on the Denny Hill project came from the appellant; that he, the respondent, expressed reluctance to taking on a second large contract, as it would require all his resources to finance the Hanford street job. He had given a bond for $1,200,000 on that contract, and had made arrangements for financing the operation, and would be unable to finance the Denny Hill project, which would require a working capital of two or three hundred thousand dollars in addition

to a $1,500,000 contract bond; that the appellant agreed to finance the contract if the respondent would join him in taking it on.

Respondent testified that, to the suggestion that the bids were already in, the appellant answered that he could procure their rejection and a new call for tenders. He also urged the contract could largely be made to finance itself through an unbalanced bid on the first unit, the clearing of the ground. New tenders were called for, and the respondent and appellant were awarded the contract formally executed September 14, 1928. In their tender, they bid $250,000 on the first unit, the preliminary clearing. The appellant estimated this could be done for $10,000; the respondent, $20,000; and the average of the other bids was $35,000.

The idea of the unbalanced bid was that the excessive price named for the first unit would be compensated by reduced prices on other units, the advantage to the contractors being that, on the completion of the first unit, they would have received enough money from the city, above the actual cost of the work, to finance the job.

As the work progressed, however, unforeseen difficulties supervened, and the respondent was pressed for money to carry on the operation. The record discloses that he made repeated and unavailing appeals to the appellant to join him in bank commitments that would enable him to obtain necessary advances. He appealed to appellant to give him a signed copy of the partnership agreement, so that he would have something to show the bank that appellant was a partner. The appellant refused to advance any money or sign any commitment that would impose any financial obligation upon him. He had, of course, signed the bond on the Denny Hill contract; but, further than

this, he did not go. On one occasion, when the respondent was pressed for ten thousand dollars to meet current bills, the appellant advanced the sum, but strictly as a personal loan and insisted that it be repaid within a week or ten days, and it was repaid by the respondent within the time. The respondent left an unsigned copy of the partnership agreement with the bank, but this, of course, was not the assurance it required.

Now, it is obvious that, if the respondent had in his possession a copy of the partnership agreement signed by the appellant, he would have given it to his bank as evidence of appellant's obligation upon both contracts. This would have supplied what the bank was insisting on. The bank continued to insist on some written evidence of appellant's obligation, and, on two occasions, at least, mailed to him its customary signature cards, to which no response was made.

Finally, in March, 1929, the respondent assigned the Hanford street contract to his bank, the Bank of California, as security for necessary advances to carry on both contracts. From this time on, the relations of the parties became strained, and, on December 19, 1929, they entered into a formal written agreement, under the terms of which the appellant withdrew from the Denny Hill contract and assigned all his interest to the respondent. This agreement recited that the parties had theretofore operated as joint venturers or partners, under the firm name and style of George Nelson & Company, under a contract, dated September 14, 1928, with the city of Seattle, for the regrading of Denny Hill; that it was the desire of the appellant to be released from the venture and sever all connection therewith; it was, therefore, stipulated and agreed

". . . that party of the second part herein, J. von Herberg, is, and he hereby this day withdraws

from said partnership, severing any and all connections therewith in so far only as said work under L. I. D. 4818 is concerned, known as Denny Hill Regrade, or for the regrading and improvement of Denny Park within said area."

It will be noted that, by the quoted recital, the agreement is specifically limited to the Denny Hill contract. Mr. Flick, respondent's counsel, testified that this restriction was inserted at the instance of Mr. Allen, appellant's counsel; and that he, Flick, in acceding to this provision, stated to Mr. Allen that his client did not recognize any right in the appellant to share in the Hanford street contract, but was willing to leave the question open so that appellant would not be foreclosed from asserting an interest. In compliance with the dissolution agreement, the respondent gave appellant surety bonds, aggregating $450,000, to save him harmless against any liability by reason of his execution of the bond on the Denny Hill contract.

The conclusion we have reached, from a careful study of the record, is that no partnership ever came into existence for carrying on the Hanford street contract. The parties were, of course, partners on the Denny Hill job; they were so, not by virtue of any collateral partnership agreement, but by reason of their participation in a joint venture. The appellant sues for the benefits accruing from a written agreement to which he never gave his assent until all danger of loss had passed. By his refusal to return to respondent a signed copy of the partnership agreement or to make any other written commitment on the Hanford street project, the appellant maintained a position that would enable him to deny liability if the project proved a losing one. On the other hand, if the venture proved profitable, possession of the agreement signed by respondent could be made the basis for a claim to share in the profits.

75

Our conclusion on the primary issue in the case makes it unnecessary for us to discuss the second question. The judgment is affirmed.

STEINERT, C. J., SIMPSON, MAIN, and HOLCOMB, JJ., concur.